*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0232p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

Estate of TORI CARTER; BRENDA CHAMBERS,
                          *Plaintiffs-Appellees,*

          *v.*

CITY OF DETROIT, et al.,

                          *Defendants,*

DONALD HOLLINS, Lieutenant,
                          *Defendant-Appellant.*

No. 04-1005

>

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-71847—John Corbett O'Meara, District Judge.

Argued: April 21, 2005

Decided and Filed: May 27, 2005

Before: BOGGS, Chief Judge; ROGERS, Circuit Judge; SHADUR, District Judge.[*]

---

## COUNSEL

**ARGUED:** Mark W. Peyser, TIMMIS & INMAN, Detroit, Michigan, for Appellant. Jana H. Sibson, Pinckney, Michigan, for Appellees. **ON BRIEF:** Mark W. Peyser, Karen A. Chopra, TIMMIS & INMAN, Detroit, Michigan, for Appellant. Jana H. Sibson, Pinckney, Michigan, for Appellees.

---

## OPINION

---

ROGERS, Circuit Judge. Defendant Lieutenant Donald Hollins appeals the district court's denial of his motion for summary judgment based on a claim of qualified immunity. Plaintiff, the Estate of Tori Carter, sued the City of Detroit and several Detroit police officers, including Hollins, under 42 U.S.C. § 1983. Decedent Carter had suffered a heart attack while in police custody as a pre-trial detainee, and was pronounced dead on arrival at the hospital. This appeal concerns only Hollins; he is alleged to have acted with deliberate indifference to Carter's serious medical needs

---
[*] The Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation.

by failing to order that Carter be taken to the hospital and failing to tell his replacement that she was ill and needed transportation.

The judgment of the district court denying Hollins's motion for summary judgment is affirmed. Taking the facts in a light most favorable to the plaintiff, Hollins knew that Carter was experiencing chest pains and shortness of breath, some of the classic symptoms of a heart attack, believed at the time that she was three days behind in taking heart medication, and yet failed to have her transported to the hospital and failed to inform his relief of her illness. Such actions are sufficient to permit a jury's inference that Hollins was deliberately indifferent to her serious medical needs. Because the facts as alleged by the Estate demonstrate the violation of a clearly established constitutional right, the district court properly concluded that genuine issues of material fact precluded summary judgment.

## I.

It is clear "that a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995). Accordingly, for purposes of this appeal, this court takes the facts as alleged by the Estate. Many of the following stated facts are of course disputed.

On April 18, 2000, decedent Tori Carter and her sister Angela Orr were arrested by members of the Detroit Police Department and were charged with felonious assault after the two had a physical fight with each other. The two were transported separately to the Second Precinct, arriving shortly after 12 noon. Lieutenant Hollins was the officer in charge at the point in time that Carter and Orr arrived.

Shortly after Carter was booked, she told Officer William Carter that she was having chest pains and needed to go to the hospital. Officer Carter informed Hollins of Tori Carter's complaint. Tori Carter also requested medicine that she had not been able to take with her from the house, and Hollins admits that the information he received on this was that Carter had not taken her "heart" medicine for three days. After Carter's death, it was determined that the medicine Carter was taking was actually for heartburn, or acid reflux, but there is no indication that Hollins knew that by "heart" medicine, Carter meant "heartburn" medicine. Hollins claims that he instructed Officer Crouch, who was the arresting officer, to transport Carter to the hospital. Crouch, however, testified that he did not recall being told to transport Carter to the hospital.

Other detainees testified that Carter cried loudly for help and continued to complain that her chest hurt and that she needed to go to the hospital, and may have even been lying on the floor of the cell while Hollins was still at the precinct. At approximately 1:00 p.m., Hollins left the Second Precinct in order to attend class. Although he had been planning to leave at 12:30 p.m., Hollins had stayed until 1:00 p.m. due to a large influx of prisoners. Because the Detroit Police Board of Review later determined that Hollins left his shift early without proper relief or permission, it can be assumed that Hollins was supposed to stay beyond 1:00 p.m., although he was at least informally permitted to leave at that time. Hollins made no entries into the precinct's "blotter" detailing Carter's complaints or the fact that he allegedly ordered Crouch to transport Carter to the hospital. Hollins knew that Carter was still at the precinct when he left; i.e., he knew that she had not been transported to the hospital. Hollins did not return to the precinct until after Carter's eventual collapse and death, but when he did return, he informed a responding homicide investigator, Frazer Adams, that he had spoken with Tori Carter personally about her complaints before he left for class. Hollins also told Adams that he had forgotten to tell his relief, Sergeant Robbie Marshall, that Carter was ill and had requested to be taken to the hospital. In a preliminary complaint report that Hollins filled out soon after he spoke with Adams, Hollins gave a different account. He made no mention

of speaking with the decedent Carter personally, stating only that he was advised by Officer Carter of Tori Carter's illness. He also stated that he "cannot recall if Sgt. Marshall was notified of [Carter's] complaining of being ill."

After Hollins left, Carter continued to complain about chest pains. At 4:00 p.m., Sergeant Marshall was relieved by Lieutenant Robinson. Robinson spoke with Carter while making rounds, and learned from this conversation that Carter was ill. Carter apparently told Robinson that she could not sleep and had not taken her acid reflux medicine. At approximately 4:10 p.m., Robinson called for a car to take Carter to the hospital. At approximately 5:00 p.m., Carter was found lying unconscious on the floor of her cell. Robinson called 911 and began performing chest compressions. Carter was taken by the responding medics to the hospital, where she was pronounced dead on arrival.

Carter's death was the result of a heart attack caused by the complete blockage of an artery. In the opinion of at least one doctor, James Davia, it was "highly probable" that the chest pains that Carter complained of earlier in the day were caused by a lack of blood flow to the heart, and were warning signs of the impending heart attack, or possibly a heart attack already. According to Dr. Davia, if Carter had been taken to the hospital when she complained of chest pain, "there is a 90% probability that she could have been appropriately treated at the hospital and would have survived the hospitalization."

The Detroit Police Board of Review investigated Carter's death, and in a report issued on April 5, 2001, recommended that criminal charges be brought against Hollins and others, and found that Hollins had violated departmental rules and regulations and should be brought before the Disciplinary Administration Unit. With respect to criminal charges, the report indicated that the Board agreed with the county prosecutor that Hollins should be charged with willful neglect of duty. With respect to departmental policies, the Board found that Hollins committed violations by failing to send Carter to the hospital after she complained of chest pains, failing to make blotter entries reporting the condition of prisoners, leaving his shift early without proper relief or permission, and failing to make a blotter entry of his departure.

Carter's Estate filed suit in Wayne County Circuit Court on April 10, 2001, against the City of Detroit, Officer Hollins, and other City of Detroit police officers, alleging violations of the Fourth and Fourteenth Amendments of the United States Constitution, violations of 42 U.S.C. § 1983, and the intentional infliction of emotional distress. On May 14, 2001, the defendants filed notice of removal, and on June 18, 2001, the District Court for the Eastern District of Michigan remanded the Estate's claim for intentional infliction of emotional distress to the state court. Officer Hollins and several of the other police officer defendants were simultaneously facing criminal charges arising from Carter's death, and the district court proceedings were stayed pending the outcome of those charges. Hollins, who, as recommended by the Review Board, had been charged with willful neglect of duty, was acquitted on October 15, 2001, following a jury trial.

In the federal suit, Hollins was alleged to have deprived Carter of the right to freedom from unreasonable seizure and the right to freedom from loss of life. More specifically, the complaint alleged that the defendants, including Hollins, "failed to provide Plaintiff's deceased any medical assistance or transportation to a medical facility, failed to call for medical transportation and failed to document in the desk blotter any information of plaintiff's deceased's complaints that would give notice to on coming supervisors of plaintiff's deceased's complaints."

On November 13, 2003, the district court denied Hollins's motion for summary judgment. The district court held that there were genuine issues of material fact regarding Hollins's actions that precluded summary judgment. The district court noted two specific reasons for denying Hollins qualified immunity: first, the testimony of other pretrial detainees indicated that Carter had

repeatedly cried out for help and had complained of chest pain, troubled breathing, and the fact that she had not taken her heart medicine, and second, the Detroit Police Board of Review's conclusion that Hollins violated departmental policies and procedures with the result that Carter's opportunity to be saved was lost. Hollins filed a Notice of Appeal on December 12, 2003.[1]

## II.

### A.     Jurisdiction

There is limited appellate jurisdiction in this case. A district court's denial of qualified immunity is an appealable final decision under 28 U.S.C. § 1291, but only "to the extent that it turns on an issue of law." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). "[A] defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson*, 515 U.S. at 319-20. It is not fatal to Hollins's appeal that the district court based its holding on the existence of genuine issues of material fact, as "[t]his court has recognized the standard articulated by the Supreme Court: '*regardless of the district court's reasons* for denying qualified immunity, we may exercise jurisdiction over the . . . appeal to the extent it raises questions of law.'" *Williams v. Mehra*, 186 F.3d 685, 689-90 (6th Cir. 1999) (en banc) (quoting *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir.1996)). Therefore, despite the label used by the district court, this court can consider whether "the undisputed facts or the evidence viewed in the light most favorable to the plaintiff fail to establish a *prima facie* violation of clear constitutional law." *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998).

Because this court does not have appellate jurisdiction over factual issues, a defendant must "concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Berryman*, 150 F.3d at 563. In purported compliance with this rule, Hollins's brief states that "[f]or appeal purposes only, Hollins does not dispute Plaintiff's version of events and discusses **only** the legal issues as applied to the basic facts established by admissible testimony." Appellant's Br. at 7. As the Estate argues, however, Hollins nonetheless spends much of the following twenty pages of his brief disputing the Estate's version of facts, arguing that the district court "erroneously considered inadmissible evidence" and "improperly found genuine issues of material fact." Appellant's Br. at 28. For instance, in one particularly obvious example, Hollins states that it "is undisputed that testimony from a variety of disinterested witnesses supports the fact that hospital transport was requested for [Carter] and that the only person who requested transport for her was Hollins, who left the station **only** after he had arranged transport and continued monitoring." Appellant's Br. at 12-13. Because the Estate supported its allegation that Hollins failed to order transportation for Carter, this statement clearly fails to concede the facts in a light most favorable to the plaintiff.

The Estate has argued that because Hollins failed to concede the facts as alleged by the Estate, this court is deprived of jurisdiction. This proposition is arguably supported by language in *Booher v. Northern Kentucky University Board of Regents*, 163 F.3d 395, 396-97 (6th Cir. 1999), and *Berryman v. Rieger*, 150 F.3d 561 (6th Cir. 1998). If, however, aside from the impermissible arguments regarding disputes of fact, the defendant also raises "the 'purely legal' question of 'whether the facts alleged . . . support a claim of violation of clearly established law,'" *Berryman*, 150 F.3d at 562 (quoting *Mitchell*, 472 U.S. at 528 n.9), then there is an issue over which this court has jurisdiction. Therefore, this court can ignore the defendant's attempts to dispute the facts and

---

[1] On December 9, 2003, Hollins had also moved to supplement the record of the district court proceeding with additional testimony taken in the state court criminal proceeding, and on the basis of the additional testimony, made a renewed motion for summary judgment. The district court, on April 21, 2004, granted the motion to supplement the record, but denied the renewed motion for summary judgment. In doing so, the district court noted that the supplemental material "offers nothing new to [the] disputed facts."

nonetheless resolve the legal issue, obviating the need to dismiss the entire appeal for lack of jurisdiction.  *See Phelps v. Coy*, 286 F.3d 295, 298-99 (6th Cir. 2002); *see also Beard v. Whitmore Lake Sch. Dist.*, 402 F.3d 598, 602 n.5 (6th Cir. 2005).

## B.          Merits of Hollins's Qualified Immunity Claim

Hollins knew that Carter was exhibiting the classic symptoms of an impending heart attack, knew she had cried for help, and believed that she was three days behind in taking her heart medication.  His failure to order transportation to take Carter to the hospital violated Carter's clearly established right to adequate medical treatment while in pretrial custody.

Qualified immunity is an affirmative defense that shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  There are two steps in the analysis: (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established.[2]  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The initial inquiry  is whether a constitutional right was violated, if the allegations are established.  *Id.*

Pre-trial detainees have a right under the Fourteenth Amendment to adequate medical treatment, a right that is analogous to the right of prisoners under the Eighth Amendment.[3]  *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001).  A cause of action under § 1983 for failure to provide adequate medical treatment requires a showing that "the defendants acted with 'deliberate indifference to the serious medical needs'" of the pre-trial detainee.  *Watkins*, 273 F.3d at 686 (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)).  There are two parts to the claim, one objective, one subjective.  For the objective component, the detainee must demonstrate "the existence of a 'sufficiently serious' medical need."  *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  For the subjective component, the detainee must demonstrate that the defendant possessed "a sufficiently culpable state of mind in denying medical care."  *Id.* (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)).

---

[2]Panels of this court occasionally employ a three-step qualified immunity analysis, as opposed to the two-step analysis set forth here.  As two recent opinions indicate, both the two-step approach and the three-step approach can be said to capture the holding of *Saucier v. Katz*, 533 U.S. 194 (2001).  *Compare Dunigan v. Noble*, 390 F.3d 486, 491 n.6 (6th Cir. 2004) (two-step approach), *with Sample v. Bailey*, —F.3d—, No. 04-4174, slip op. at 6 n.3 (6th Cir. May 9, 2005) (three-step approach).  The third step is "whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004) (internal quotation omitted).  In cases subsequent to *Saucier* the Supreme Court has not formally broken up the two steps prescribed by *Saucier* into three steps, *see, e.g.*, *Brosseau v. Haugen*, —U.S.—, 125 S.Ct. 596, 596 (2004); *Groh v. Ramirez*, 540 U.S. 551, 563 (2004), but the three-step approach may in some cases increase the clarity of the proper analysis.  In many factual contexts, however, including this one, the fact that a right is "clearly established" sufficiently implies that its violation is objectively unreasonable. *Cf. Champion*, 380 F.3d at 905.

[3]As Hollins notes, the district court appears not to have ruled on the Estate's Fourth Amendment claim.  Because the Estate has not alleged that Carter's arrest was unlawful, or that she was injured during the arrest, Hollins would be entitled to qualified immunity on this claim.  Alternately, it is possible that the Estate intended to plead that Hollins's refusal to provide medical care to a suspect in custody constituted an unreasonable seizure, such that it would violate the Fourth Amendment.  This type of claim may be cognizable. *See Boone v. Spurgess*, 385 F.3d 923, 933-34 (6th Cir. 2004).  Because, however, "there seems to be no logical distinction between excessive force claims and denial of medical care claims when determining the applicability of the Fourth Amendment," *id.* at 934, there is no need to address the potential Fourth Amendment violation separately from the alleged Fourteenth Amendment violation.

First, Carter's medical need was "sufficiently serious" because—taking the facts in a light most favorable to the Estate—Carter was demonstrating the classic signs of an impending heart attack. As we recently explained:

> [W]here a plaintiff's claims arise from an injury or illness so obvious that even a layperson would easily recognize the necessity for a doctor's attention, the plaintiff need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated. Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame.

*Blackmore*, 390 F.3d at 899-900 (internal citation and quotation omitted); *see also Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). The court in *Blackmore* held that Blackmore's appendicitis was an "obvious" illness because, while in police custody, he complained of sharp and severe stomach pains, made these complaints over two days, and vomited. 390 F.3d at 899. These symptoms were the "classic signs of appendicitis." *Id.* at 900.

Hollins argues that under an earlier Sixth Circuit case, *Napier v. Madison County*, 238 F.3d 739 (6th Cir. 2001), the Estate was required to provide verifying medical evidence to satisfy the objective requirement. The decision in *Blackmore*, however, expressly limited *Napier*'s requirement of verifying medical evidence to cases involving only "minor maladies or non-obvious complaints of a serious need for medical care." *Blackmore*, 390 F.3d at 898. Carter, like Blackmore, displayed the "classic" signs of a serious illness, not a minor malady, but an impending heart attack. She was complaining of chest pain and complaining that she had trouble breathing. She said that she was three days behind in taking her heart medication. She was lying on the floor while Hollins was still in the precinct. Although her complaints were made over a much shorter period of time than the two days of *Blackmore*, that fact is not dispositive because even laypersons can be expected to know that a person showing the warning signs of a heart attack needs treatment immediately in order to avoid death. Therefore, the Estate was not required to provide medical documentation in order to satisfy the objective component of the test. The obviousness of Carter's condition satisfies the objective requirement of the failure to provide adequate medical treatment test.

The next question is whether the Estate has demonstrated that Hollins possessed a sufficiently culpable state of mind in denying medical care so that the subjective component is satisfied. There is sufficient evidence in this case that Hollins actually understood that Carter was subject to a substantial risk of serious harm, and the Estate has therefore met its burden. A defendant possess a sufficiently culpable state of mind when he acts with deliberate indifference. *Johnson*, 398 F.3d at 875.

> Deliberate indifference is not mere negligence. Deliberate indifference requires that the defendants knew of and disregarded a substantial risk of serious harm to [the detainee's] health and safety. This standard is subjective. It is not enough that there was a danger of which an officer should objectively have been aware. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." If an officer fails to act in the face of an obvious risk of which he should have known but did not, the officer has not violated the Eighth or Fourteenth Amendments.

*Watkins*, 273 F.3d at 686 (internal citations omitted) (quoting *Farmer*, 511 U.S. at 837).

There was substantial evidence before the district court that Hollins was fully aware of all the symptoms Carter displayed and believed that she had not taken her heart medication for three days. He was informed of Tori Carter's complaints by Officer Carter, and, taking the facts in a light

most favorable to the plaintiff, spoke with Tori Carter in person. There is also evidence that Hollins did in fact draw the inference that Carter was suffering from a serious medical problem, as he repeatedly claims that he ordered Crouch to transport Carter to the hospital. Although Hollins claims that he only "elected" to act, and did not actually believe that Carter was ill, a jury would be entitled to discount that explanation. *See Johnson*, 398 F.3d at 876. Nor was it necessary for the Estate to offer explicit evidence that Hollins in fact drew the inference. In most cases in which the defendant is alleged to have failed to provide treatment, there is no testimony about what inferences the defendant in fact drew. Nonetheless, in those cases, a genuine issue of material fact as to deliberate indifference can be based on a strong showing on the objective component. For example, in a recent case, *Garretson v. City of Madison Heights*, a panel of this court held that where one named and one unnamed officer were told by the plaintiff pre-trial detainee that she was a diabetic in need of insulin, and was past due for her next dose, a genuine issue of material fact existed as to whether the two acted with deliberate indifference to her medical needs in failing to have her transported to the hospital. —F.3d— , 2005 WL 1076560, at *4 (6th Cir. Apr. 27, 2005). Carter's situation was similar, because, taking the facts as the Estate alleged, Hollins was both directly informed by Tori Carter that she was in distress and was informed by Officer Carter that she was experiencing chest pains, had not taken her "heart" medication, and needed to go to the hospital.

There is also evidence that Hollins disregarded the substantial risk of serious harm to Carter's health. For purposes of avoiding summary judgment, the Estate has sufficiently demonstrated deliberate indifference. Again, taking the facts in a light most favorable to the plaintiff, Hollins did not in fact implement the decision to order a car, did not inform his replacement of Carter's illness, and made no record in the police blotter that might have alerted other officers to the problem or the fact that transportation should have arrived.[4] Furthermore, when he left the precinct at approximately 1:00 p.m., he knew that Carter still had not been transported to the hospital.

In sum, based on the alleged facts taken in the light most favorable to Carter, Carter's medical need was sufficiently serious, Hollins was aware that the need was serious, and yet disregarded it. Hollins therefore violated Carter's right to be free from deliberate indifference to her serious medical need.

Finally, to complete the qualified immunity analysis, this right was clearly established at the time of Hollins's violation. As early as 1972, this court stated that "where the circumstances are clearly sufficient to indicate the need of medical attention for injury or illness, the denial of such aid constitutes the deprivation of constitutional due process." *Fitzke v. Shappell*, 468 F.2d 1072, 1076 (6th Cir. 1972). Furthermore, in 1992, this court explicitly held that a pretrial detainee's right to medical treatment for a serious medical need has been established since at least 1987. *Heflin v. Stewart County*, 958 F.2d 709, 717 (6th Cir. 1992). The right that Hollins violated was therefore clearly established. Under the facts alleged by the Estate, Hollins is not entitled to qualified immunity. The district court's denial of summary judgment was proper.

## C.      Supervisor Liability

As Hollins notes, the district court made no ruling on the Estate's claim that Hollins committed a violation in his supervisory capacity. At present, the only constitutional violation before this court is the one asserted on the part of Hollins himself. Supervisor liability attaches when a supervisor encourages or condones a constitutional violation. *See Bass v. Robinson*, 167 F.3d 1041, 148 (6th Cir. 1999). Hollins was clearly not his own supervisor; therefore, he was not

---

[4] Hollins has argued that the district court erred in not only considering these facts, but also the fact that the Police Board of Review held that Carter violated departmental policies and procedures. There is no need for this court to determine the question of whether the district court erred in this regard, as the underlying facts alone are sufficient to support the conclusion that Hollins acted with deliberate indifference to Carter's serious medical needs.

acting as a supervisor with respect to anyone who committed a constitutional violation.  Hollins is therefore entitled to qualified immunity with respect to the supervisor claim.

## III.

The order of the district court is AFFIRMED.