KEITH, Circuit Judge.
I concur in the majority’s disposition of the claims Bradley has alleged against Dispatcher White, Cadet Crouse, and Chief Kitchen. I, however, am compelled to depart from the majority with regard to Bradley’s claims against Officer Simpson and Lieutenant Thomson for acts of deliberate indifference and gross negligence.
I. Deliberate Indifference
A plain application of the deliberate indifference standards in this circuit and by the Supreme Court affirms that Bradley has stated viable claims of deliberate indifference against Officer Simpson and Lieutenant Thomson. As the majority has acknowledged, Majority Op. at-, the Supreme Court set forth the standard for evaluating claims of deliberate indifference in Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994):
We hold ... that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.
This circuit has repeatedly taken a two-step approach in applying the standard of Farmer: we have required that claims of deliberate indifference satisfy (1) an objective component, and (2) a subjective component. Estate of Carter v. City of Detroit, 408 F.3d 305, 311 (6th Cir.2005) (“There are two parts to the claim, one objective, one subjective.”); Johnson v. Karnes, 398 F.3d 868, 874 (6th Cir.2005) (“A claim for the deprivation of adequate medical care ‘has two components, one ob *516 jective and one subjective.’ ”)(internal citation omitted); Blackmore v. Kalamazoo County, 390 F.3d 890, 895 (6th Cir.2004) (same); Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir.2001) (same). Under the objective component, we require a claimant to establish the “existence of a ‘sufficiently serious’ medical need.” Estate of Carter, 408 F.3d at 311; Blackmore, 390 F.3d at 895 (quoting Farmer, 511 U.S. at 834, 114 S.Ct. 1970); Comstock, 273 F.3d at 703. Under the subjective component, the claimant must show that the defendant possessed “a sufficiently culpable state of mind,” Estate of Carter, 408 F.3d at 311, such that the defendant knew of but nonetheless disregarded the claimant’s serious risk of harm.
In the instant case, the majority concedes, and I agree, that suicidal tendencies constitute a medical need that is sufficiently serious to satisfy the objective component of the deliberate indifference standard. Majority Op. at -. See also Comstock, 273 F.3d at 703 (“We have held that a prisoner’s ‘psychological needs may constitute serious medical needs, especially when they result in suicidal tendencies.’”) (quoting Horn v. Madison Cty. Fiscal Ct., 22 F.3d 653, 660 (6th Cir.1994)).
Having satisfied the objective component, Bradley’s claim must also satisfy the subjective component. Inasmuch as I believe that the evidence, viewed in the light most favorable to Bradley, permits a jury to reasonably conclude that Officer Simpson and Lieutenant Thomson both perceived that Bradley posed a serious risk of harm to himself and that they disregarded that risk, I would hold that Bradley has stated a viable claim of deliberate indifference against those two officials. To meet the subjective component, the evidence must permit a reasonable jury to find that Officer Simpson and Lieutenant Thomson each possessed a “sufficiently culpable state of mind.” Estate of Carter, 408 F.3d at 312. To do that, Bradley must show that “the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregard that risk.” Comstock, 273 F.3d at 703 (citing Farmer, 511 U.S. at 837, 114 S.Ct. 1970). “Deliberate indifference ‘entails something more than mere negligence,’ but can be ‘satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.’” Blackmore, 390 F.3d at 895-96 (quoting Farmer, 511 U.S. at 835, 114 S.Ct. 1970).
In the present case, the evidence established that Officer Simpson and Lieutenant Thomson both witnessed Bradley state that he wanted either to shoot himself or to be shot by a police officer. After hearing the statement, Officer Simpson demonstrated sufficient concern for Bradley’s mental state and reported it to Lieutenant Thomson, who had in fact heard the statement himself. Out of concern that Bradley was likely suicidal, Lieutenant Thomson directed that Bradley’s prisoner intake file be flagged with a red sticker to indicate he was likely suicidal. Officer Simpson was present at the time and knew that Bradley had been red-flagged as suicidal. In my view, this set of facts, viewed in the light most favorable to Bradley, sufficiently demonstrates that Officer Simpson and Lieutenant Thomson both perceived that Bradley posed a serious risk of harm to himself.[1]
*517 The evidence, I believe, equally establishes that Officer Simpson and Lieutenant Thomson disregarded that risk. A jury could reasonably conclude that despite having knowledge of the serious risk that Bradley posed to himself, Officer Simpson recklessly disregarded that risk when he gave Bradley two blankets. The majority errs by concluding that “[wjhile it is true that Simpson gave Bradley the blankets, there is no evidence that he did so knowing that Bradley might attempt to hang himself,” Majority Op. at - (emphasis added), and that “[e]ven if the court were to find that Simpson should have known of the risk presented when giving Bradley the blanket, when an official fails to act in the face of an obvious risk of which she should have known but did not, the official has not inflicted punishment in violation of the Eighth Amendment,” Id. at -. These conclusions are in error for two reasons. First, as discussed above, there is evidence that Officer Simpson personally perceived the risk that Bradley “might attempt” to commit suicide. Officer Simpson heard Bradley make a statement evincing suicidal tendencies, and he considered the statement sufficiently significant that he reported it to Lieutenant Thomson. Officer Simpson also knew that Lieutenant Thompson had decided that Bradley’s prisoner intake file should be flagged with a red sticker indicating he was suicidal. Both of these events occurred in Officer Simpson’s presence before he gave Bradley two blankets. Thus, there is evidence that Officer Simpson knew Bradley might attempt to harm himself when he gave him the blankets.
Moreover, the majority’s holding implies that the standard for a deliberate indifference claim requires Officer Simpson to have known that Bradley would harm himself. That is not the rule. Bradley must show only that Officer Simpson perceived the risk and disregarded that risk. Knowledge that harm would result is not required. “[A] plaintiff need not show that the official acted ‘for the very purpose of causing harm or with knowledge that harm will result.’... Instead, ‘deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.’ ” Comstock, 273 F.3d at 703 (quoting Farmer, 511 U.S. at 835-36, 114 S.Ct. 1970) (emphasis added) (internal citation omitted). Viewed in the light most favorable to the non-moving party, the record evidence in this case demonstrates that Officer Simpson recognized the risk and subsequently disregarded it.
Turning to Lieutenant Thomson, the evidence demonstrates that he heard Bradley’s suicidal statement, instructed the dispatcher to place a red sticker on Bradley’s prisoner intake file, and at some point thereafter saw Bradley in his cell with the blankets. The majority shields Lieutenant Thomson of any liability because he “made provisions to have [Bradley] transferred to a facility which was better equipped to provide for his needs.” Majority Op. at -. In my view, arranging Bradley’s transfer does not absolve Lieutenant Thomson of his obligation to provide for Bradley’s medical needs while Bradley remained under his care. As the majority makes clear, Lieutenant Thomson, as the on duty command officer, had a multitude of options at his disposal for dealing with suicidal detainees. See Majority Op. at *518 -,-, and-. Yet, after recognizing the risk that Bradley posed to himself, Lieutenant Thomson did nothing.
For the above reasons, I would affirm the district court’s denial of summary judgment with regard to Officer Simpson and Lieutenant Thomson.
II. Gross Negligence
Inasmuch as I conclude that a genuine issue of material fact exists as to whether (1) Officer Simpson acted with gross negligence in giving blankets to a detainee who he knew presented a suicidal risk, and (2) Lieutenant Thomson acted with gross negligence because after designating the detainee as suicidal he observed him with blankets but did not monitor him or remove the blankets, I would affirm the decision of the district court. Police officers take prisoners as they find them. Here, Bradley was suicidal. The evidence indicates that the officers knew he was suicidal. Despite this knowledge, Officer Simpson gave him two blankets and Lieutenant Thomson observed him with the blankets but did not remove the blankets or closely monitor Bradley. The police officials did not merely fail to act; rather, their joint actions worsened Bradley’s fate. Under these circumstances, I would hold that a jury could reasonably conclude that Officer Simpson and Lieutenant Thomson were “the one most immediate, efficient, and direct cause preceding” Bradley’s death. Robinson v. City of Detroit, 462 Mich. 439, 613 N.W.2d 307, 317 (2000).
None of the cases cited by the majority support its conclusion that Officer Simpson and Lieutenant Thomson cannot be liable for gross negligence resulting in the death of Bradley. This case is not at all like Kruger v. White Lake Twp., 250 Mich.App. 622, 648 N.W.2d 660, 662 (2002), in which the plaintiff was left alone in the booking room “and was eventually able to maneuver her way out of the handcuffs and escape. As she fled from the police station, she ran into traffic and was hit by an unidentified vehicle.” The present case is equally distinguishable from Scott v. Charter Twp. of Clinton, No. 233266, 2002 WL 31160298 (Mich.Ct.App. Sept.27, 2002). In that unpublished case, police officers had arrested Scott during a domestic dispute and “Scott committed suicide by hanging himself with the drawstring from his pants.” Id. Unlike in the present case, Scott did not involve the presence of any evidence showing that the officers had determined or even suspected the detainee was suicidal. In addition, Scott killed himself using a drawstring from his own clothing, and not using articles which had been provided by the police.
The majority’s reliance on Soles v. Ingham County, 316 F.Supp.2d 536 (W.D.Mich.2004) is similarly misplaced. In Soles, the detainee committed suicide in his cell by hanging himself with his bed sheet. Id. at 540. The prison officials in Soles, however, had moved the detainee to an observation cell after he reported having suicidal thoughts to a corrections officer, arranged for his immediate evaluation by a mental health worker, transferred him to the psychiatric unit of St. Lawrence Hospital, and returned him to an observation cell upon his release from the hospital psychiatric unit. Id. at 539-40. In addition, the detainee underwent multiple therapy sessions with the prison mental health worker and “signed a ‘no-harm contract,’ agreeing not to harm himself or others and to notify a deputy if he felt he was going to harm himself or others,” Id. at 540, all prior to being returned to the general population where he hanged himself. Hence, I am not persuaded that the district court’s holding in Soles has any applicability to the case pending before this court.
*519 The majority holds that “it is clear that the one most immediate, efficient and direct cause of Bradley’s death was his own act of hanging himself.” Majority Op. at ---. If the majority is right, under Michigan law a detainee’s suicide can never result from the gross negligence of police officers because, by definition, every successful suicidal detainee will have died from self-inflicted acts. I, however, have found no case law holding that a detainee’s suicide can never result from the gross negligence of police officers. If this were so, it would make no difference whether the officers had supplied this known suicidal detainee with blankets, as they did, or with a noosed rope. After determining Bradley was suicidal, Officer Simpson gave him — and Lieutenant Thomson let him keep — blankets that he used to commit suicide. Under these circumstances, I believe a jury could reasonably conclude that these officers constituted the single most immediate, efficient and direct cause of Bradley’s death.
Thus, I respectfully dissent.

. Based on Officer Simpson’s deposition testimony, the majority asserts that "[ajlthough Simpson believed that Bradley had made the remark [about shooting himself] in jest, he reported it anyway just to be safe.” Majority Op. at -. Officer Simpson's after-the-fact attempt to discount Bradley's suicidal statement does not square with his actions at the *517 time that the statement was made. At that earlier time, he thought the remark was serious enough that he should report it to his command officer. Moreover, Officer Simpson’s belated assessment in this regard merely creates a genuine issue of material fact concerning what he actually perceived, and the majority’s reliance on it does not view the evidence in the light most favorable to Bradley.