GRIFFIN, Circuit Judge,
concurring.
I concur in the result and join in all portions of the lead opinion except Section II.A.1. Specifically, I join in affirming summary judgment for Oakland County for the reasons stated by Judge Cudahy. I also join in affirming summary judgment for prison caseworker Roberta Rice on the basis of qualified immunity because it would not have been “clear to a reasonable [person in her position] that [her] conduct was unlawful in the situation [she] confronted.” See Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); see also Baranski v. 15 Unknown Agents of the BATF, 452 F.3d 433, 447 (6th Cir.2006) (en banc) (a government agent is entitled to qualified immunity unless he violates a “clearly established” constitutional right).
I respectfully disagree, however, with Judge Cudahy’s conclusion that Perez established a genuine issue of material fact with regard to whether Rice’s conduct violated the Eighth Amendment (Section II. A.I.). In my view, the record does not support the allegation that Rice acted with deliberate indifference[1] to Perez’s known serious medical need as we have defined that term in the context of prisoner suicide.
The lead opinion asserts that “[a] genuine issue of fact regarding the objective component of the [deliberate indifference] standard can be met by showing that Perez posed a strong likelihood of another suicide attempt.” (Emphasis added.) The lead opinion correctly states the legal standard for deliberate indifference in the prisoner-suicide context. In our circuit,
the proper inquiry concerning the liability of a City and its employees in both their official and individual capacities under section 1983 for a jail detainee’s suicide is: whether the decedent showed a strong likelihood that he would attempt to take his own life in such a manner that failure to take adequate precautions amounted to deliberate indifference to the decedent’s serious medical needs.
Gray v. City of Detroit, 399 F.3d 612, 616 (6th Cir.2005) (emphasis added) (quoting Barber v. City of Salem, 953 F.2d 232, 239-40 (6th Cir.1992)).
But the record simply does not show a genuine issue as to whether Perez satisfied this standard. Again, to conclude that Rice violated Perez’s Eighth Amendment rights, it is not enough to establish that she may have acted with deliberate indifference to some possibility of suicide, or even a likelihood of suicide. This is a critical distinction: the record might show a genuine issue as to whether Rice acted with deliberate indifference to a real, even a substantial risk of suicide, but it does not permit a reasonable factfinder to conclude *434 Rice was aware of a strong likelihood of suicide and acted with deliberate indifference to that very high level of risk.
As the lead opinion notes,
there are certainly reasons to doubt the objective conclusion that Perez posed a strong likelihood of another suicide attempt. Dr. Hemachandra, a trained and licensed psychiatrist, opined that Perez gave no indication of suicidal ideation during his final evaluation on November 8, 2002. Additionally, Rice’s counseling notes during the time period of early to mid-November show that Perez denied any suicidal intention, and they reflect Rice’s conclusion that Perez was not suicidal or otherwise in need of an enhanced watch status.
I agree, and the record does not create a genuine issue as to whether Perez posed a strong likelihood of another suicide attempt at that particular time. Judge Cudahy approves the district court’s view that
Rice cannot rely on Dr. Hemachandra’s November 8, 2002 assessment of whether Perez was suicidal (he determined that Perez was not on that date) because the situation did not remain stable between that date and the date Rice assigned Perez to a single cell. Rice learned during this time that Perez was refusing to take his medication without Dr. Hemachandra’s consent or direction, and also that Perez was experiencing problems getting along with other inmates.
The lead opinion does not explain, however, how knowledge that Perez was not getting along with other inmates equates or necessarily leads to knowledge that there was a strong likelihood that he would try to kill himself. Judge Cudahy does not identify any expert opinion or other evidence that supports such a correlation. With regard to Rice learning that Perez had been refusing to take his medication since his November 8 visit to Hemachandra, it is important to note why Perez apparently refused to take the medication during that period. As Rice knew from her own conversation with Perez just before the fateful housing decision, the reason Perez eschewed the medication was simply because he did not feel suicidal and had plans to improve his life on various fronts.
As permitted by her employer, Rice participated in monitoring and interacting with Perez and making treatment and related housing decisions. The record does not suggest that her final housing and behavior-watch decisions were taken with deliberate indifference to a strong likelihood of suicide — even assuming arguendo that there was such a strong likelihood. “Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.” Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir.1976). Judge Cudahy’s attempt to establish the genuine possibility that Rice perceived such a strong likelihood of suicide at the relevant time is unavailing. The lead opinion asserts,
Throughout her time treating Perez, Rice made the decision, on several occasions (most recently a month before he committed suicide), to place Perez on an elevated watch status and to house Perez in an observation cell or with roommate(s). Viewing this evidence in the light most favorable to Perez Sr., this evidence can be construed as demonstrating that Rice had the subjective knowledge, at least at times, that Perez posed a risk of suicide.
The fact that Rice knew Perez was or might be suicidal at earlier times simply *435 does not support the inference that Rice knew that Perez posed a risk of suicide at the later time, when Perez appeared and claimed to be in a much-improved state of mind.
As a caseworker who had both some relevant training and familiarity with Perez, Rice acted in reliance on her interaction with and observation of Perez, and on Perez’s repeated, very recent statements that (1) he had lied about wanting to commit suicide, seeking only to obtain medication to help him cope with incarceration rather than his medical condition, (2) he had continued lying about his suicidal ideation and mental state (to both Hemachandra and Rice) in order to obtain medication to sell to fellow prisoners, (3) he believed that he still did not need, and so was refusing to take, that medication, and (4) he had a newfound religious faith that gave him purpose, as well as a desire to better himself and prepare for the future by earning a GED. Cf. Soles v. Ingham Cty., 316 F.Supp.2d 536 (W.D.Mich.2004) (mental-health worker was entitled to summary judgment on § 1983 claim; although she knew prisoner had recently attempted suicide and still reported feeling somewhat depressed, she was not deliberately indifferent by returning prisoner from observation cell to general population, where examination five days earlier showed “significant improvement in [prisoner’s] mood and attitude,” prisoner “seemed less agitated and told her he had not experienced suicidal thoughts for at least a week,” and guards contemporaneously reported that prisoner “had been less withdrawn and was interacting more normally with others”), aff'd, 148 Fed. Appx. 418 (6th Cir.2005). Accordingly, this was not a case where the most recent information available to the prison official suggested a likelihood — let alone a strong likelihood' — of suicide. This information, in fact, suggested quite the opposite.
Finally, the lead opinion asserts,
Dr. Hemachandra testified that past threats or attempts at suicide are considered when determining whether an individual is suicidal, though someone who has previously considered or attempted suicide will not necessarily do so again. Dr. Hemachandra also testified that a patient who fails to take prescribed psychotropic medication posed a risk of becoming depressed, unable to control his moods, and ultimately suicidal. Perez v. Oakland County et al., 380 F.Supp.2d 830, 841 (E.D.Mich. 2005). Perez also presented expert testimony stating that individuals who suffer from schizophrenia and have made past suicide attempts are more likely than others to attempt suicide again.
Hemachandra’s opinion on this subject may be correct. It may also be that prison caseworkers such as Rice should be familiar with these alleged statistical trends and should take them into account when evaluating a prisoner with a history of schizophrenia, attempted or threatened suicide, and/or refusal to take prescribed medication. But Judge Cudahy does not rely on any evidence that Rice was in fact aware of these general indicators of increased risk. This omission is significant, because it is Rice’s knowledge and perception of Perez’s imminent likelihood of suicide that is relevant, not the opinion of Hemachandra or anyone else about Perez’s suicide risk factors. Cf. Horn by Parks v. Madison Cty. Fiscal Ct., 22 F.3d 653, 661 n. 2 (6th Cir.1994).
With regard to Perez’s known failure to take his medication in the period between his last Hemachandra visit and his last Rice visit, the record shows merely that Rice must have credited Perez’s insistence that he no longer needed the medication because he did not wish to kill himself. Admittedly, it may have been unwise to *436 credit Perez’s characterization of his state of mind and his explanation for discontinuing his medication, particularly in light of his history and his unmedicated state itself. If so, that means only that Rice may have been negligent in failing to perceive a strong likelihood of suicide. If one fails to perceive a strong likelihood, one cannot then be deliberately indifferent to it. Farmer v. Brennan, 511 U.S. 825, 838, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (“[A]n official’s failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.”); Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir.2001).
In summary, Perez failed to carry his burden of establishing a genuine issue of material fact that an objectively strong likelihood of suicide existed at the time of the assignment to a single cell. Even if such a strong likelihood existed at that time, the surrounding circumstances and the most recent information available to Rice preclude a finding by a reasonable trier of fact that Rice was aware of such a likelihood and acted with deliberate indifference toward it. This is an additional and independent reason why Rice is entitled to immunity. Viewing the evidence in the light most favorable to the non-moving party, Perez has failed to establish that Rice committed a violation of the Eighth Amendment.
For these reasons, I concur in the result and join in all portions of the lead opinion, except Section II.A.1.

. This cumbersome phrase is necessary because the Eighth Amendment does not give a prisoner a "right to adequate medical care” per se. Inadequate care may or may not support a finding that the provider acted with deliberate indifference rather than some less culpable mens rea, such as negligence. See Estate of Carter v. City of Detroit, 408 F.3d 305, 312 (6th Cir.2005) ("Deliberate indifference is not mere negligence.”); see, e.g., Clark-Murphy v. Foreback, 439 F.3d 280, 291 (6th Cir.2006) ("On these facts, it is doubtful that negligence could be proved, much less deliberate indifference.”).