NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0236n.06
Filed: March 29, 2007

No. 06-5865

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CHRISTA KEETON, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| METROPOLITAN GOVERNMENT OF | ) | STATES DISTRICT COURT FOR THE |
| NASHVILLE AND DAVIDSON COUNTY, | ) | MIDDLE DISTRICT OF TENNESSEE |
| | ) | |
| Defendant, | ) | |
| | ) | |
| OFFICER DAVID M. HACKER, OFFICER | ) | |
| ROBERT DURBIN, AND SGT. TERRENCE | ) | |
| GRAVES, | ) | |
| | ) | |
| Defendant-Appellants. | ) | |

**Before: SILER, GIBBONS, and ROGERS, Circuit Judges.**

**ROGERS, Circuit Judge.** This is an interlocutory appeal in a § 1983 action from the district court's denial of a motion to dismiss on qualified immunity grounds. Christa Keeton brought this suit against the Metropolitan Government of Nashville and several officers employed by the Metropolitan Police Department. Keeton asserts, among other things, that the officer-defendants violated her Fourth Amendment rights when they entered her home without a warrant in response to a call made by an inebriated citizen who reported that Keeton was "depressed."

1

Three of the officers named in Keeton's lawsuit ("the patrol officers") filed a motion to dismiss the complaint against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court denied that motion, and the patrol officers then brought this interlocutory appeal. The patrol officers argue that they are entitled to qualified immunity because the law regarding the "exigent circumstances" exception to the Fourth Amendment warrant requirement did not clearly establish that their entry into Keeton's home in these circumstances was unlawful.

Viewing the facts entirely as presented in the complaint, the patrol officers lacked a reasonable basis for believing that exigent circumstances existed when they entered into Keeton's home. Accordingly, the exigent circumstances exception is not implicated by the facts as alleged, and the alleged conduct constitutes a violation of the clearly established right of citizens to be free of warrantless entry into their homes. The district court's order denying the motion to dismiss is therefore affirmed.

This appeal from a denial of a 12(b)6 motion to dismiss must be resolved solely on the basis of facts alleged in Keeton's complaint, which, for purposes of this appeal, we accept as true. *See Evans-Marshall v. Bd. of Educ.*, 428 F.3d 223, 228 (6th Cir. 2005). On March 19, 2005, Keeton was at her home grieving the recent death of her mother.[1] Keeton wished to be left alone; however, "an inebriated citizen" who wished to check on Keeton called the police with a claim that Keeton was

---

[1]On appeal, Keeton indicates that the woman she referred to as "mother" in her complaint was in fact her biological grandmother.

"depressed." The caller herself was unable to check on Keeton because the caller was too drunk to drive. Sergeant Terrence Graves, Officer David M. Hacker, Officer Robert Durbin, and Officer Dylan Kinney[2] went to Keeton's home in response to this call. The patrol officers knocked on Keeton's door and called her on the phone, but received no response. Without a warrant or Keeton's consent, the patrol officers proceeded to enter Keeton's home by "drilling" the lock on her door. Once inside Keeton's residence, the patrol officers attempted to persuade Keeton to leave her bedroom, but she refused and insisted that the patrol officers leave her home. The patrol officers then left Keeton's residence. After leaving Keeton's home, one or more of the patrol officers told the Crisis Team from the Mental Health Cooperative that Keeton was "loud and agitated, refusing to cooperate" and that "she refused to respond to police negotiators." Keeton's complaint contains other factual allegations relating to events that transpired after the patrol officers left and officers from the police department's SWAT team entered the residence; however, these additional allegations do not involve the patrol officers bringing this appeal.[3]

On March 17, 2006, Keeton filed a complaint in the Tennessee Circuit Court. The only claims in the complaint pertaining to the patrol officers are a claim for damages pursuant to 42 U.S.C. § 1983 for their allegedly unlawful entry into Keeton's home and a state law claim for

---

[2]Officer Dylan Kinney is not a party to this appeal.

[3]The patrol officers also argue that Keeton alleges that she was suicidal in ¶ 22 of her complaint. However, it is apparent from the text of the complaint that it does not contain that allegation. To make a legal argument based on the police department's treatment of "allegedly suicidal" persons is clearly not the same as alleging that she was in fact suicidal.

outrageous conduct. The defendants removed the case to federal court on April 28, 2006. On May 18, 2006, before any discovery was conducted, Patrol Officers Graves, Hacker, and Durbin filed a motion to dismiss asserting that they are entitled to qualified immunity with respect to the sole federal claim asserted against them. On June 19, 2006, the district court denied the motion, holding that the facts available from Keeton's complaint did not support a finding of qualified immunity. The patrol officers then filed this interlocutory appeal.

"Qualified immunity is an affirmative defense that shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Estate of Carter v. Detroit*, 408 F.3d 305, 310 (6th Cir. 2005) (citations omitted). "There are two steps in the analysis: (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Id*.

As to the first step of this analysis, the facts as alleged in Keeton's complaint establish that the patrol officers violated her Fourth Amendment right to be free from unreasonable searches when they entered her home without a warrant. "If the police enter a home without a warrant, the entry is presumptively unreasonable unless the government proves otherwise." *United States v. Huffman*, 461 F.3d 777, 782 (6th Cir. 2006) (citation omitted). "Warrantless entries are permitted, however, where exigent circumstances exist. Exigent circumstances exist where there are real immediate and serious consequences that would certainly occur were a police officer to postpone action to get a warrant." *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002) (citations and quotation

marks omitted). "The relevant inquiry is whether the facts are such that an objectively reasonable officer confronted with the same circumstances could reasonably believe that exigent circumstances existed." *Id.*

Drawing all reasonable inferences in favor of Keeton, the limited and unreliable information that the patrol officers had when they chose to enter Keeton's home cannot support application of the exigent circumstances exception to this case. When the patrol officers forcibly entered Keeton's residence, we must infer that they knew only that a severely intoxicated individual, with no known relationship to Keeton, claimed that Keeton was "depressed." Nothing in Keeton's complaint indicates that the caller believed or told the police that Keeton intended to harm herself. Furthermore, given that the caller was so intoxicated that she could not drive, whatever information the caller relayed was clearly unreliable. Because an unreliable report that an individual is merely "depressed" does not give rise to an exigency, the entry into Keeton's home was unconstitutional. We need not address the question whether, should additional facts emerge in the course of this litigation showing that the patrol officers had additional evidence that Keeton was suicidal or otherwise inclined to harm herself, the patrol officers may be entitled to qualified immunity on that basis.

Turning briefly to the second step of the qualified immunity analysis, this court has previously observed that there are "two paths for showing that officers were on notice that they were violating a 'clearly established' constitutional right—where the violation was sufficiently 'obvious' under the general standards of constitutional care that the plaintiff need not show 'a body' of

'materially similar' case law . . . and where the violation is shown by the failure to adhere to a 'particularized' body of precedent that 'squarely govern[s] the case here.'" *Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199-201 (2004)). It is clearly established that the exigent circumstances exception does not justify conduct normally prohibited by the Fourth Amendment absent some reasonable basis for the belief that an emergency actually exists. "To justify this type of warrantless intrusion police officers 'must be able to point to specific and articulable facts which, taken together with other rational inferences from those facts, reasonably warrant that intrusion.'" *United States v. Morgan*, 743 F.2d 1158, 1163 (6th Cir. 1984) (holding that no exigent circumstances justified the warrantless entry into the home of a criminal defendant) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). Where the police enter a home without a warrant and with no justification beyond an unverified, unreliable report that the occupant of the home is "depressed," the constitutional violation is obvious in light of the general constitutional rule. Accordingly, the actions as alleged violate a clearly established right even though Keeton has not identified any cases that squarely govern with particularly similar facts. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (noting that "officials can still be on notice that their conduct violates established law even in novel factual circumstances").

Because the only facts in the record support Keeton's assertion that her constitutional right has been violated, and because that right was clearly established, the order of the district court denying defendants' motion to dismiss is AFFIRMED.