NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0428n.06
Filed: June 20, 2007

No. 06-3843

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,    )
      )
   Plaintiff-Appellee,    )
      )
v.    )  ON APPEAL FROM THE UNITED
    )  STATES DISTRICT COURT FOR THE
ANDRE A. PONDER    )  NORTHERN DISTRICT OF OHIO,
    )  EASTERN DIVISION
   Defendant-Appellant.    )
      )
      )
      )
      )
      )

**Before: Moore and Griffin, Circuit Judges; McKinley, District Judge.[*]**

**McKinley, District Judge.** Defendant-Appellant Andre Ponder was indicted by a federal grand jury for being a felon in possession of a firearm. Following his indictment, the Defendant-Appellant filed a motion to suppress the evidence obtained as a result of the warrantless search of his brother's home. The district court denied Ponder's motion to suppress and Ponder entered a conditional guilty plea. On appeal, Ponder argues that the district court erred in denying his motion to suppress because the warrantless search of his brother's home was not justified by exigent circumstances. The Government argues that the district court erred in finding that Ponder had

_____

[*]The Honorable Joseph H. McKinley, Jr., United States District Judge for the Western District of Kentucky, sitting by designation.

standing to challenge the warrantless search of his brother's home since he was an overnight guest there. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

On September 24, 2004, a caller alerted police that shots had been fired. When police officers arrived on the scene, they observed a bloodied, vandalized vehicle with smashed windows. The owner of the car, Willie Hines, told the officers that two brothers had vandalized his vehicle and threatened him with a gun. Hines told the officers that he could identify the two brothers and offered to take them to the place where Hines believed they would be. The officers placed Hines in the back of their patrol vehicle and followed his directions. The police eventually arrived at what they would learn was one of the brothers' homes and saw two black males on the porch whom Hines identified as his assailants. When one of the suspects on the porch saw the police car, he ran inside. The police approached the other suspect, who remained on the porch, and who was eventually identified as Andre Ponder, the Defendant-Appellant ("Andre"), and observed that his hand was wrapped in cloth and bleeding. The officers proceeded to place Andre under arrest for felonious assault and vandalism to a vehicle. Simultaneously, the officers requested permission to search the home into which the other brother, Kenya, had fled. Kenya's girlfriend, a resident of the home, refused to allow the police to enter without a warrant. She asked, however, that she be allowed to remove her children, who were asleep in the home, if police were going to enter the house anyway. The police then proceeded to enter and search the premises for Kenya. During their search, they found two guns in the clothes dryer. Eventually, the police found Kenya hiding in a neighbor's house.

On November 9, 2004, a federal grand jury indicted Andre for being a felon in possession of a firearm.  Following his indictment, the Defendant-Appellant filed a motion to suppress the evidence obtained as a result of the warrantless search of his brother's home, where he claimed to be an overnight guest. The district court held that the Defendant-Appellant had standing to challenge the warrantless search of his brother's residence because he was an overnight guest there.  The district court, however, denied the motion to suppress, holding that the warrantless search was justified by the existence of "exigent circumstances."

## II. ANALYSIS

### A. The Defendant-Appellant has Standing

Initially, the Government argues that the Defendant-Appellant does not have standing to object to the search of Kenya's residence since Andre  was only a visitor there and, therefore, had no reasonable expectation of privacy. The Defendant-Appellant argues that this issue cannot be considered on appeal because the Government did not appeal the district court's order holding that the Defendant-Appellant had standing.  The Defendant-Appellant's argument fails in this regard because a prevailing party need not cross-appeal to be entitled to support the judgment in its favor on grounds expressly rejected by the district court. See, e.g., *Jacobs v. E.I. du Pont de Nemours & Co.*, 67 F.3d 1219, 1246 n.43 (6th Cir. 1995) ("...an appellee can propose alternative grounds in support of trial court judgment so long as those arguments were presented below"); *Ball v. Abbott Advertising, Inc.*, 864 F.2d 419, 421 (6th Cir. 1988) ("A defendant may raise an alternative theory without cross-appealing.")  Accordingly, we can consider  whether the Defendant-Appellant has standing to challenge the warrantless search since the Government raised the issue before the district

court.

To have standing, a person must have a subjective expectation of privacy in the premises searched. *Minnesota v. Olson*, 495 U.S. 91, 95-97 (1990). The Defendant has the burden of proof to establish the standing necessary to assert a Fourth Amendment violation. *United States v. Smith*, 263 F.3d 571, 582 (6th Cir. 2001). Importantly, the Supreme Court has held that an overnight guest, unlike a guest present at a home without the homeowner's consent, has a reasonable expectation of privacy that will support standing. *Olson*, 495 U.S. at 97; *Minnesota v. Carter*, 525 U.S. 83, 90 (1998).

In the proceedings below, the district court held that the Defendant-Appellant had met his burden of establishing standing by presenting the "consistent and unequivocal" testimony of three witnesses - his mother, his brother, and his brother's girlfriend. The district court found that the testimony of these witnesses outweighed the circumstantial evidence introduced by the Government, that Andre brought no personal overnight items to his brother's residence and that he never told the police that he was an overnight guest there. On appeal, the Government argues that Defendant-Appellant's witnesses were not credible because their testimony was contradictory and because they sought to protect the Defendant-Appellant.

However, in reviewing a motion to suppress, the district court's factual findings are accepted unless clearly erroneous. *United States v. Huffman*, 461 F.3d 777, 782 (6th Cir. 2006); *United States v. Ogbuh*, 982 F.2d 1000, 1003 (6th Cir. 1993). To put it another way, a district court's factual findings are overturned only if the appellate court has "a definite and firm conviction that a mistake has been committed." *Huffman*, 982 F.2d at 782 (quoting *United States v. Worley*, 193 F.3d 380, 384

(6th Cir. 1999)). Accordingly, a "district court's findings based on the credibility of witnesses before it are entitled to great deference on appeal." *Isabel v. City of Memphis*, 404 F.3d 404, 411 (6th Cir. 2005).

Here, based on the evidence, we find reasonable the district court's conclusion that the Defendant-Appellant was an overnight guest at his brother's residence. Thus, the Defendant-Appellant has standing to challenge the warrantless search that occurred on the night in question.

**B. The Warrantless Search was Justified**

On appeal, the Defendant-Appellant argues that the warrantless search of the home was not justified because not one of the exigent emergency exceptions is applicable to the situation that existed when the police entered Kenya's home without a warrant. We disagree.

It is a "'basic principle of Fourth Amendment' law that searches and seizures inside a home without a warrant are presumptively unreasonable." *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 996 (6th Cir. 1994) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)). Thus, the Fourth Amendment prohibits the warrantless entry and search of a home absent exigent circumstances. *Payton*, 445 U.S. at 589-590. Exigent circumstances are situations where "real, immediate, and serious consequences" will "certainly occur" if a police officer postpones action to obtain a warrant. *United States v. Williams*, 354 F.3d 497, 503 (6th Cir. 2003) (quoting *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002)(quoting *Welsh v. Wisconsin*, 466 U.S. 740, 751 (1984)); see also *Thacker v. City of Columbus*, 328 F.3d 244, 253 (6th Cir. 2003). The relevant inquiry is whether the facts are such that an objectively reasonable officer confronted with the same circumstances could reasonably believe that exigent circumstances existed. *Ewolski*, 287 F.3d at 501 (citing *Dickerson*

*v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996)). Finally, it is the Government who bears the burden of proving the existence of a legitimate exigency. *United States v. Lewis*, 231 F.3d 238, 241 (6th Cir. 2000).

We have identified the following situations that may give rise to exigent circumstances: 1) the hot pursuit of a fleeing felon; 2) the imminent destruction of evidence; 3) the need to prevent a suspect's escape; and 4) the risk of danger to police or others. *Williams*, 354 F.3d at 503; *United States v. Johnson*, 22 F.3d 674, 680 (6th Cir. 1994). Whether exigent circumstances exist is determined at "the moment of the warrantless entry by the officers." *United States v. Killebrew*, 560 F.2d 729, 733 (6th Cir. 1977). Here, the district court held that the warrantless entry of Kenya's home was justified based on the fourth exception - because the situation created "an immediate threat to the safety of the officers."

In order to show that the warrantless entry and search of a residence was justified based upon a "risk of danger," the Government must show that "there was a risk of serious injury posed to the officers or others that required swift action." *Huffman*, 461 F.3d at 783 (citing *United States v. Whren*, 517 U.S. 806, 813 (1996)). More specifically, a "risk of danger" exists where 1) the officers have a reasonable belief that a suspect in the home has a weapon; and 2) the officers can demonstrate that the suspect had a willingness to use the weapon. *Causey v. City of Bay City*, 442 F.3d 524, 529 (6th Cir. 2006). Accordingly, in *Causey*, our court held that it was reasonable for officers to enter a residence on New Year's Eve without a warrant because, after learning that a gun had been fired on the property six times, it was necessary for the officers to "ascertain whether someone inside the house was in peril," despite the fact that 1) a neighbor had informed the officers that shots had also

been fired from the home on previous holidays; 2) the officers had spoken to the occupants through a window and the occupants had told the officers that no one was injured; and 3) the officers made no observations that contradicted the occupants' assurances. *Id.* Our court upheld the search because the facts indicated that there was someone within the residence who had both a weapon and a willingness to use it and, thus, the officers had a justified, reasonable belief that either they or others were in imminent peril of bodily harm.

Similarly, we have upheld warrantless searches due to a "risk of danger" in *Dickerson v. McClellan*, 101 F.3d 1151 (6th Cir. 1996), and *Hancock v. Dodson*, 958 F.2d 1367 (6th Cir. 1992). In *Dickerson*, our court held that a warrantless entry into a home was justified where a neighbor called 911 to report that nine gunshots had been fired; the occupant of the house was drunk; and the officer heard the occupant yelling in a threatening tone. 101 F.3d 1151. In *Hancock*, our court held that exigent circumstances existed where, in addition to a shots-fired report, the police also knew from the suspect's psychologist that the suspect was "suicidal and possibly homicidal" and that he had threatened to kill any responding officer. *Hancock*, 958 F.2d at 1375-76. These cases are unlike *United States v. Bates*, in which our court held that no exigent circumstance existed, even though the officers believed that the suspect had a handgun in his residence, since the officers possessed no specific information suggesting that the suspect was likely to use the weapon or become violent. 84 F.3d.790, 795-796 (6th Cir. 1996).

The police in this case, based on the facts known to them at the time of their warrantless entry into Kenya's residence, could reasonably have concluded that the circumstances posed an immediate risk of harm, either to themselves or others. It was reasonable for the officers to fear that

Kenya had both a weapon and a willingness to use it since Willie Hines had indicated that Andre and Kenya were the individuals who had illegally fired shots near his home less than an hour earlier. Accordingly, the officers were justified in making a warrantless entry into the house to search for Kenya.

The Defendant-Appellant further argues, however, that even if the police had a reasonable belief that a "risk of harm" existed, this exigent situation was created by the officers themselves, and therefore, the warrantless search was not justified.

It is well-established that police officers are not free to create exigent circumstances to justify their warrantless searches. *United States v. Campbell*, 261 F.3d 628, 633 (6th Cir. 2001)(citing *United States v. Morgan*, 743 F.2d 1158, 1163 (6th Cir. 1984)). Indeed, in order "for a warrantless search to stand, law enforcement officers must be responding to an unanticipated exigency rather than simply creating the exigency for themselves." *United States v. Chambers*, 395 F.3d 563, 566 (6th Cir. 2005). Importantly, however, establishing that police have created an exigent situation usually requires a showing of "deliberate conduct on the part of the police evincing an effort intentionally to evade the warrant requirement." *Ewolski v. City of Brunswick*, 287 F.3d 492, 504 (6th Cir. 2002). There is no evidence here to suggest that the police made a deliberate effort to evade the warrant requirement. Rather, it appears that they were properly conducting an ongoing investigation that had begun just a few hours earlier. Accordingly, we hold that the officers did not intentionally create an exigent situation, but rather the exigent situation naturally arose when they observed Kenya flee into the house.

**III. CONCLUSION**

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.