**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 14a0677n.06**

**No. 13-3859**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Aug 28, 2014 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| DELMAR BARCLAY, | ) | |
| | ) | OPINION |
| Defendant-Appellant. | ) | |
| | ) | |

**BEFORE:** COLE, Chief Judge; BOGGS and STRANCH, Circuit Judges.

**STRANCH, Circuit Judge.** Delmar Barclay appeals the district court's denial of his motion to suppress a shotgun and one shotgun shell seized from his residence after police arrested him outside the home. Barclay entered a conditional plea of guilty on one count of being a felon unlawfully in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), reserving his right to appeal the suppression ruling. He contends that a warrantless entry to his residence was a violation of his Fourth Amendment rights. In light of our duty to draw all factual inferences in favor of upholding the district court's decision, we find that the evidence sufficiently supports affirmance of the denial of Barclay's suppression motion.

**I. BACKGROUND**

On the evening of November 29, 2012, around 7:20 p.m., the Akron Police Department received two 911 calls about the sound of gunfire coming from somewhere near an apartment building at 244 Grand Avenue. One caller reported hearing five shots. Officers Kelly Brown and Jeffrey Lamm initially responded to the calls. They spoke to a neighbor who reported that when she heard the shots, she looked outside and saw a man standing in the yard diagonal to hers, pointing a rifle-like gun in the air. The man ran in the back door of the house with the gun.

Officers Brown and Lamm went to 920 Bloomfield Avenue, the address where the neighbor had seen the man, and moved to the front porch with guns drawn. They could hear a man and a woman inside arguing and heard the male say, "I wasn't even close. I wasn't even close." Shortly thereafter, Officers Andrew Hughes and Nick Manvo arrived in a second police unit, met the other officers on the front porch, and Officer Hughes went around to secure the back door.

Officer Lamm knocked on the front door and announced himself as "Police. No one responded to the knock for a minute, then Barclay answered. He opened the door, told the officers to "hold on," then slammed the door. He ran out the back door, attempting to escape, but Officer Hughes stopped him. Officer Manvo went around back to assist Officer Hughes. When handcuffing Barclay, the officers noticed shotgun shell casings scattered on the ground near where Barclay was kneeling to be handcuffed, but they did not see a shotgun.

During the arrest, Barclay loudly and repeatedly declared to the officers that no one else was in the house and told them not to go inside. His declarations were so loud that his neighbor could hear them clearly. The neighbor called 911 to report that, in fact, someone was in the

home because she could see lights and movement on the second floor of Barclay's home. This information was relayed to the officers at the house.

As Officers Hughes and Manvo prepared to bring Barclay to their cruiser, Barclay shouted toward the back door, "Don't let anybody in the house." While Officers Brown and Lamm were on the porch securing the front of the house, Officers Hughes and Manvo brought Barclay around to their police cruiser. Soon after, Officer Lamm again attempted to get the individuals inside the house to open the front door by speaking to the occupants and knocking on the door. Eventually, Delores Carson, a guest visiting Barclay's house, answered the door and spoke to the police. Officers Lamm and Brown then moved past her and entered the home. Officer Hughes saw them enter the home and decided to follow.

There were three women inside, including Carson. The officers questioned them about the presence of other occupants and requested that those other occupants be summoned. One of the women went to the staircase and called for Barclay's three minor children, who came downstairs. The adults stated that no one else was in the home.

Once in the home, Officer Hughes saw a shotgun shell on the counter in the kitchen. He walked into the kitchen to collect it. While in the kitchen, he looked through an open doorway leading to the basement and saw a shotgun on the basement floor. The officers seized the shotgun and the shell.

Barclay was charged with being a convicted felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). He pleaded not-guilty and moved to suppress the evidence seized during the police sweep of his house after his arrest. The district court held a suppression hearing and subsequently denied the motion.

Following the denial, Barclay withdrew his not guilty plea and entered a conditional plea of guilty of violating 18 U.S.C. § 922(g)(1). As part of his plea agreement, he expressly reserved the right to appeal the court's denial of his motion to suppress. The district court sentenced Barclay to 15 years in prison.

Barclay now appeals the district court's denial of his suppression motion.

## II. Analysis

A district court's denial of a motion to suppress raises a mixed question of law and fact. *United States v. Ellis*, 497 F.3d 606, 611 (6th Cir. 2007). This court reviews the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Blair*, 524 F.3d 740, 747 (6th Cir. 2008). "Whether a search and seizure was reasonable under the Fourth Amendment is a question of law." *Id.* "When a district court denies a suppression motion, we draw all factual inferences in favor of upholding the district court's suppression ruling." *United States v. Daws*, 711 F.3d 725, 727 (6th Cir. 2013) (internal quotation marks omitted).

Under the Fourth Amendment, "searches and seizures inside a home without a warrant are presumptively unreasonable." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (internal quotation marks omitted). However, that presumption can be overcome and entry can be justified in "special circumstances" based on consent, *Steagald v. United States*, 451 U.S. 204, 216 (1981), or "exigent circumstances" that require a search. *Michigan v. Fisher*, 558 U.S. 45, 47 (2009); *United States v. Plavcak*, 411 F.3d 655, 663-4 (6th Cir. 2005). The government here argued that exigent circumstances justified the officers' warrantless entry into Barclay's home.

The exigent circumstances doctrine is a limited exception to the Fourth Amendment prohibition on warrantless entry. *United States v. Purcell*, 526 F.3d 953, 960 (6th Cir. 2008). The government has the burden of demonstrating that exigent circumstances justified the

warrantless entry. *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984). To determine the reasonableness of a warrantless entry based on exigent circumstances, we balance the extent of the intrusion on an individual's Fourth Amendment rights against the legitimate governmental interests supporting entry. *Id*. at 750–53.

In order for an exigency to justify a warrantless entry and search, officers must have an objectively reasonable basis for believing an exigency in fact exists. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). "In determining whether sufficient exigent circumstances exist to justify the warrantless entry and search or seizure, the court must consider the totality of the circumstances and the inherent necessities of the situation at the time." *United States v. Brown*, 449 F.3d 741, 745 (6th Cir. 2006) (internal quotation marks omitted). This court considers whether an officer's belief that an exigency existed was objectively reasonable based upon the "objective facts reasonably known to, or discoverable by, the officers at the time of the search." *United States v. Tibolt*, 72 F.3d 965, 969 (1st Cir. 1995); s*ee also Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990).

Though not exhaustive, this court has identified four broad categories of exigent circumstances that can justify warrantless entry: "(1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's escape, and (4) a risk of danger to the police or others." *Purcell*, 526 F.3d at 960 (internal quotation marks omitted). Here, the government contends that the fourth category—the "risk of danger" or "safety" exigency— justified the police entry.

The risk-of-danger exigency can apply where the police believe that someone in the home is injured and in danger. *Fisher*, 558 U.S. at 47; *see also United States v. Huffman*, 461 F.3d 777, 785 (6th Cir. 2006) (holding that officers must have an objectively reasonable

belief "either [that] someone was in possible danger or that someone posed a risk to the officers" for the risk-of-danger exigency to apply). This exception requires officers to have "an objectively reasonable basis for believing that a person within the house is in need of immediate aid." *Fisher*, 558 U.S. at 47. Indications of the need of aid include reported observations of distress, *Schreiber v. Moe*, 596 F.3d 323, 330 (6th Cir. 2010), and credible, reliable evidence that someone inside the home is in trouble. *Johnson v. City of Memphis*, 617 F.3d 864, 869 (6th Cir. 2010).

Here, the officers knew that shots had been fired. When they arrived on the scene, the officers heard a man arguing with a woman inside. They then knocked and announced their presence, but Barclay was reluctant even to open the front door. Upon opening it, he almost immediately slammed it in the officers' faces and ran to escape out the back door. Once stopped by Officer Hughes, Barclay repeatedly lied to the officers, claiming that no one was in the house. In contradiction to his adamant declarations, Barclay later shouted to someone inside not to let anyone in the house and a 911-caller reported seeing someone on the second floor. The gun used to fire the reported shots had not been recovered and a neighbor had reported seeing a man run into the house holding the gun. Several officers were in the yard or on the porch of the house. At this point, the officers had no way of knowing whether Barclay was the shooter, or whether a different man, wielding a gun, was still in the home. In sum, there had just been a heated argument, Barclay made every effort to keep the officers out of the house, there were unknown people inside with whom Barclay was connected and communicating, and the gun was still unaccounted for.

We addressed a situation with some similarities in *Causey v. City of Bay City*, 442 F.3d 524 (6th Cir. 2006). In *Causey*, the officers "had a report that shots had been fired from the

residence, that a 911 call had been made from the residence, that someone in the residence claimed that a child had made the call, and that no children were thought to be in the residence." *Id* at 530. We determined that the officers' entry into the home was lawful, stating that:

> Although the officers might have inferred that an exigency did not exist from the plaintiffs' assurances that no one was injured, it was nevertheless equally plausible and not unreasonable, for the officers to infer that either (1) the plaintiffs were concealing another person (perhaps incapacitated by the gunshots) inside the house or (2) the plaintiffs were being intimidated to give assurances by an unseen attacker in the residence.

*Id*. (internal citation and quotation marks omitted). In *Johnson*, 617 F.3d at 870, we determined that the officers had reason to believe that someone inside the home was injured or in danger. We held that "[t]he officers' actions—announcing their presence and, after receiving no answer, entering in order to perform a cursory search for any endangered or injured persons—w[ere] an objectively reasonable response." *Id*.

The intrusion into Barclay's home to check on the inhabitants was not unreasonable. Drawing all factual inferences in favor of upholding the decision below, the evidence is sufficient for the officers to reasonably determine that they were in danger or someone inside the home was in danger or injured.

Having lawfully entered the home based on exigent circumstances, the officers then discovered the shotgun in plain view. "Warrantless seizures presumptively violate the Fourth Amendment, but under certain circumstances an officer may seize evidence in plain view without a warrant." *United States v. Mathis*, 738 F.3d 719, 732 (6th Cir. 2013) (citing *Arizona v. Hicks*, 480 U.S. 321, 326–27 (1987)). In order for the plain-view doctrine to apply to the seizure of an item, there are four factors that must be satisfied: (1) it must be in plain view, (2) its incriminating character must be immediately apparent, (3) the officer's presence in the place from where the item can be plainly seen must be lawful, and (4) the officer's access to the item

must be lawful.  *Mathis*, 738 F.3d at 732 (citing *Horton v. California*. 496 U.S. 128, 136–37 (1990)).  "If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy."  *Horton*, 496 U.S. at 133.

After the individuals in the house had been collected, Officer Hughes saw the shotgun shell sitting on the kitchen counter in plain view.  Given that the officers were responding to reports of shots fired and found shotgun shells in the backyard, the shell was incriminating. Officer Hughes lawfully walked into the kitchen to look at and collect the shell.  Had the shell not been obviously incriminating, plain-view doctrine would not have permitted Officer Hughes to wander into the kitchen looking at potentially relevant items because the doctrine does not apply to items that are only "suspicious."  *United States v. McLevain*, 310 F.3d 434, 443 (6th Cir. 2002).

While lawfully in the kitchen to collect the shell, Officer Hughes could see the shotgun through an open door to the basement.  Under the facts of this case, the plain-view discovery and subsequent seizure of the shotgun and shotgun shell were lawful.  *Horton*, 496 U.S. at 135.

### III. Conclusion

Assessing the facts in accordance with our standard of review, we find that the warrantless entry to Barclay's home was justified by exigent circumstances and the seizure of the weapon was lawful under the plain-view doctrine.  We AFFIRM the district court's denial of suppression motion.