NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0041n.06

No. 15-2551

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

STEPHANIE STEPHAN,                              )
                                               )
    Plaintiff-Appellee,                        )
                                               )
v.                                             )
                                               )
TANYA HEINIG,                                  )
                                               )    ON APPEAL FROM THE
    Defendant-Appellant,                       )    UNITED STATES DISTRICT
                                               )    COURT FOR THE EASTERN
WEST BLOOMFIELD TOWNSHIP FIRE                   )    DISTRICT OF MICHIGAN
DEPARTMENT; TIMOTHY TOROK; RICHARD             )
PAUL; and WEST BLOOMFIELD TOWNSHIP, a          )
Michigan Municipality,                         )
                                               )
    Defendants.                                )
                                               )
                                               )

BEFORE:    MERRITT, BATCHELDER, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. Tanya Heinig was one of several firefighter–paramedics to respond to Stephanie Stephan's 911 call on November 28, 2011. Heinig and the others arrived shortly after Stephan suffered a seizure. When Stephan woke from the seizure, she became agitated. In response to Stephan's aggression, Robert Barnes, a police officer on the scene, grabbed her. Heinig also grabbed Stephan, though more forcefully, until Stephan complained that Heinig was hurting her. Stephan subsequently filed a § 1983 suit against Heinig, and the district court denied Heinig's motion for summary judgment on the excessive-force claim after

concluding that Heinig was not entitled to qualified immunity. Heinig now appeals that decision.

Because Heinig's use of force was objectively reasonable, she is entitled to qualified immunity.

I.

In an interlocutory appeal of a district court's denial of qualified immunity, this court does not question the district court's determination that there is sufficient evidence of a constitutional violation to send the case to a jury. *DiLuzio v. Village of Yorkville, Ohio*, 796 F.3d 604, 609–11 (6th Cir. 2015). This opinion accordingly relies upon the district court's version of the incident.

Stephan is a second-degree black belt in Tai Kwon Do. *Stephans v. West Bloomfield Township*, No. 13-14877, 2015 WL 6791527, at *1 (E.D. Mich. Nov. 6, 2015). On November 28, 2011, Stephan had a grand mal seizure at Master Kwang Han's Dojo, a Tai Kwon Do studio. *Id.* Han called 911, and four firefighter–paramedics from the West Bloomfield Fire Department—Ryan Glashauser, Tanya Heinig, Timothy Torok, and Richard Paul—responded along with police officer Robert Barnes. *Id.* at *1–2. Glashauser and Torok had previous experience with Stephan and knew she could be agitated after having a seizure, which is common for seizure patients. *Id.* When the responders arrived, Han was on the phone with Stephan's mother. *Id.* Han gave the phone to Glashauser, who tapped Stephan on the arm to see if she was awake. *Id.* In response, Stephan punched Glashauser in the leg, though not intentionally, as she was just waking from her seizure. *Id.*

The first thing Stephan remembers after regaining consciousness was Heinig standing over her saying she could go to jail for hitting Glashauser. *Id.* Stephan then took the phone from Glashauser to talk to her mom. *Id.* Because Stephan wanted to tell her mom about Heinig's comment, but did not want the responders to hear her, she spoke to her mom in Chaldean, her

native language. *Id.* When Stephan was on the phone, Paul rolled his eyes, laughed, and mocked her. *Id.* Stephan assumed Paul was making fun of her for speaking Chaldean, so she became agitated. *Id.* She threw her phone toward Paul—though she did not intend to hit him— and swore at him. *Id.* at *2–3. After throwing her phone, Stephan stood up to walk—admittedly, angrily—toward the back of the dojo to change her clothes and leave. *Id.* at *3. Because Paul was standing between her and the back of the dojo, Stephan had to walk toward Paul. *Id.*

At that point, Barnes, perceiving danger, grabbed Stephan's right arm and pushed her toward the ground. *Id.* Stephan complained to Barnes that he was hurting her, to which he responded: "You need to stop fighting, or it's going to hurt more." *Id.* Heinig then grabbed Stephan's left arm, tried to force Stephan on her head, used either her knee or her full body weight to apply pressure to Stephan's back to the point that Stephan could not breathe, and raised Stephan's left arm "way up." *Id.* When Stephan screamed that she had shoulder problems and that Heinig had dislocated her shoulder, Heinig let go of her. *Id.* Eventually Stephan calmed down and left the dojo with her sister. *Id.*

Stephan sued Heinig, Torok, Paul, West Bloomfield, and the West Bloomfield Fire Department, asserting excessive-force and failure-to-train theories under § 1983 as well as gross negligence, and claiming damages as a result of a shoulder dislocation and emotional injuries. R.1, PgID #1–8. The defendants moved for summary judgment, R.34, PgID #169, and the district court granted the motion on all but Stephan's excessive-force claim against Heinig, *Stephans*, 2015 WL 6791527, at *12.

The district court held that Heinig was not entitled to qualified immunity. The court evaluated the three *Graham* factors—"the severity of the crime at issue, whether [Stephan] pose[d] an immediate threat . . . , and whether [Stephan was] actively resisting arrest or

attempting to evade arrest by flight"—and concluded that a reasonable jury could find that Heinig's use of force was unreasonable. *Id.* at \*5. The court first reasoned that Stephan did not commit a serious crime. *Id.* The court then found that "Stephan did not legitimately pose a threat to anyone's safety"; "she posed a minimal threat" before Heinig intervened, and she posed no threat at the moment Heinig grabbed her. *Id.* Finally, the district court concluded that "whether Stephan actively resisted [was] at least a wash." *Id.* at \*6. Additionally, the court rejected Heinig's argument that some amount of force was undoubtedly necessary in the situation, noting that even if some force was necessary, the amount of force Heinig used was clearly excessive. *Id.* The district court went on to hold that Heinig had violated a clearly established right. *Id.* The court reasoned that "a reasonable jury could find that Stephan was subdued and not actively resisting by the time Heinig intervened," and it is clearly established that an officer may not use "gratuitous" force on a suspect who is already incapacitated. *Id.*

## II.

Heinig was entitled to qualified immunity. Although we may not question the district court's determination of evidence sufficiency, *DiLuzio*, 796 F.3d at 609–10, we may disregard attempts by Heinig to dispute the facts and resolve a purely legal issue on appeal, *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005). Therefore, in this appeal the court may ask: Given the district court's factual inferences in favor of Stephan, did the district court make the correct *legal* determination that Heinig violated Stephan's clearly established Fourth Amendment rights? The answer is no.

This is because, when analyzing a Fourth Amendment claim, a court must determine whether the challenged conduct was objectively reasonable "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*,

490 U.S. 386, 396 (1989). Both Stephan and Heinig recognize this as the correct standard. However, rather than ask what a reasonable officer in Heinig's position would have perceived during the incident, the district court asked, for each of the *Graham* factors: Could a reasonable jury find that this fact actually existed? For example, instead of concluding that a reasonable officer would not have seen Stephan as a threat, the district court reasoned that Stephan did not actually pose a threat, *Stephans*, 2015 WL 6791527, at *5. Along the same lines, instead of deciding that a reasonable officer could not have believed that Stephan was resisting, the court found that Stephan may not have been actually resisting, *id.* at 6. From this analysis, and relying solely on the *Graham* factors, the district court concluded that Heinig's conduct was unreasonable. This application of the Fourth Amendment's objective-reasonableness standard was deficient as a matter of law, and we have jurisdiction to evaluate whether, under the correct standard, Heinig violated the Fourth Amendment.

Under the correct legal standard, Heinig acted reasonably by intervening, because a reasonable officer in her position would have found the intervention necessary. The *Graham* factors, alone, are not dispositive. Rather, assessing whether a seizure is objectively reasonable is "fact-specific [and] based on the totality of the circumstances." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015). Thus, even considering that Stephan had not committed a violent crime, posed at most a minimal threat, and may not have been resisting Barnes, various factors could have led Heinig to believe that her use of force was necessary: Stephan was a second-degree black belt in Tae Kwon Do and therefore knew how to fight; Stephan acted aggressively in front of Heinig by yelling obscenities, throwing her phone, and walking angrily toward Paul; and Barnes told Stephan immediately before Heinig intervened that Stephan needed to stop fighting him. Under these circumstances, no clearly established law renders it unreasonable for

Heinig to grab Stephan and force her to the floor.  Heinig thus did not violate Stephan's

constitutional rights and is entitled to qualified immunity.

The judgment denying qualified immunity to defendant Heinig is reversed.