NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0439n.06

No. 18-5748

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FREDDIE E. JUDD,

      Plaintiff-Appellee,

v.

CITY OF BAXTER, TENNESSEE, et al.,

      Defendants,

ROBERT HANEY,

      Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Aug 21, 2019
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

BEFORE: **BATCHELDER, SUTTON, and DONALD, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge.** Freddie Judd—seventy-six years old at the time—was eating dinner one evening in August 2015 when he was informed that the store where he worked was on fire. Grabbing the keys to the store, he raced to the fire and tried to give the keys to a nearby police officer so she could let in the firemen. Much of what happened next is in dispute. What is not in dispute is that Judd ended up on the ground with a police officer trying to handcuff him with the assistance of Robert Haney, a paramedic. By the end of the night Judd had a broken right elbow, a severely bruised back, and a skinned nose and knees. Judd sued numerous parties present at the scene, including, as relevant to this appeal, the paramedic Haney. Haney invoked qualified immunity, which the district court denied, and Haney then filed this interlocutory appeal. We **AFFIRM**.

**I.**

Appellee Freddie Judd is a self-described frail individual. He has difficulty walking due to a bad knee, and he has heart problems that required a pacemaker to be implanted two weeks before the event in question. He was seventy-six years old at the time. Late one evening in August 2015, Judd was eating dinner at his home when he was informed that L & J Market—a store he worked at that was owned by his girlfriend—was on fire. Judd raced to the scene, and by the time he arrived "at least two fire engines, two Putnam County ambulances . . . and [City of Baxter Police Department Officer Maggie] Bennett were on the scene, along with a number of civilian onlookers" and Robert Haney, a paramedic employed by Putnam County.

Judd noticed the firefighters trying to force open a locked door. Judd approached Officer Bennett and tried to give her his keys. Judd claims that, without any warning or justification, Officer Bennett "grabbed [him] and [threw him] in the[] gravel."[1] Haney then "pounced on [him], sticking his knee in [his] back." Judd claims also that Haney beat him repeatedly in the back and may have caused his broken elbow. In addition to the injuries to his elbow, Judd sustained skinned knees, a bruised back, and cuts to his nose. Once he was on the ground, his injuries prevented him from getting up or moving.

Judd sued the City of Baxter, City of Baxter police chief Danny Holmes, City of Baxter police officer Maggie Bennett, Putnam County, and Putnam County paramedic Robert Haney. Judd later agreed to the voluntary dismissal of the City of Baxter, Danny Holmes, and Putnam County, leaving, as relevant to this appeal, his individual capacity claims under 42 U.S.C. § 1983 against Officer Bennett and Haney for false arrest and excessive force. Both Haney and Officer

---

[1] As explained in Part II *infra*, when a defendant brings a summary judgment motion based on qualified immunity, we adopt the plaintiff's version of the facts unless they are blatantly contradicted by the record. *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 565 (6th Cir. 2013). Therefore, although Haney disputes Judd's account of the facts, the only facts relevant in this appeal, and the only facts we discuss, are the facts as alleged by Judd.

Bennett moved for summary judgment on qualified immunity grounds. The district court denied qualified immunity to Bennett as to both claims. It granted qualified immunity to Haney on the false arrest claim because Judd did not prove "that he has a right against false arrest when someone assists the arresting officer." But the court denied Haney's motion for qualified immunity regarding the excessive force claim because "[t]aking Judd's version of facts as true, a reasonable jury could find that Haney's actions constituted excessive force." This appeal concerns only the denial of qualified immunity for the excessive force claim against Haney.

## II.

"Qualified immunity shields government officials in the performance of discretionary functions from standing trial for civil liability unless their actions violate clearly established rights." *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 608 (6th Cir. 2015). There are two steps to analyzing a qualified immunity claim at the summary judgment stage. First, did "the facts . . . alleged or shown [by the plaintiff] make out a violation of a constitutional right"? *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citations omitted). And second, if a constitutional right was violated, was "the right at issue . . . 'clearly established' at the time of [the] defendant's alleged misconduct"? *Id.* (citation omitted). The plaintiff bears the burden of showing that a clearly established right was violated and "must, at a minimum, offer sufficient evidence to create a 'genuine issue of fact.'" *DiLuzio*, 796 F.3d at 608–09 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). Because at the summary judgment stage an appellate court "view[s] all facts and draw[s] all reasonable inferences in the light most favorable to the nonmoving party," in the qualified immunity context "'this usually means adopting . . . the plaintiff's version of the facts,' unless the plaintiff's version is 'blatantly contradicted by the record, so that no reasonable

jury could believe it.'"[2]  *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 565 (6th Cir. 2013) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  If the plaintiff meets his or her burden, "the court must deny summary judgment."  *DiLuzio* , 763 F.3d at 609.

Judd is alleging Haney violated his constitutional right to be free from excessive force.  *See Brown v. Lewis*, 779 F.3d 401, 418 (6th Cir. 2015) (holding that "the Fourth Amendment . . . protects individuals from the use of excessive force during an arrest or investigatory stop").  Judd's first burden, therefore, is to provide evidence from which a jury could find that Haney used excessive force.  The test for whether an officer's actions count as excessive force is as follows:

> Whether an officer's use of force in effecting an arrest violates the Fourth Amendment is a question of whether his actions are "'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation."  The test is "reasonableness at the moment" force is used, "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

*Martin v. City of Broadview Heights*, 712 F.3d 951, 958 (6th Cir. 2013) (citations omitted).  If Judd prevails on this step, he moves to the second step in qualified immunity analysis and must show that the right was clearly established at the time it was violated.  Here, the test is "whether

---

[2] A plaintiff's account is "blatantly contradicted by the record," for example,  when the plaintiff's version of the facts is contradicted by video evidence:

> There is one limited exception to the requirement that a defendant seeking qualified immunity must concede the plaintiff's factual account—the plaintiff's account can be disregarded where the evidence is "'so utterly discredited by the record' as to be rendered a 'visible fiction.'"  In [*Scott v. Harris*, 550 U.S. 372 (2007)] the plaintiff's account was totally discredited because it was contradicted by video evidence of the incident.  Here, the [defendant] officers challenge [plaintiff's] account and some statements of his witness . . . based on their own testimony and that of the "independent" witness . . .  who initially called the police.  The officers' testimony about the incident is not the type of evidence in the record which "utterly discredit[s]" [plaintiff's] version of the facts and therefore the officers must accept the plaintiff's version of the facts . . . .

*Younes v. Pellerito*, 739 F.3d 885, 889 (6th Cir. 2014) (citations omitted); *see also Jennings v. Fuller*, 659 F. App'x 867, 868 (6th Cir. 2016) ("Here, the heart of the dispute regarding excessive force is not about whose version of events to believe, but about whether [plaintiff's] version, insofar as it is not contradicted by video evidence of the altercation, satisfies the standard for denying qualified immunity.  That is a legal question.").

there was clearly established law at a sufficient level of specificity to put a reasonable officer on notice that the conduct at issue was unconstitutional." *Brown*, 779 F.3d at 417.

We hold that Judd has provided evidence from which a reasonable jury could find that Haney violated Judd's constitutional right against the use of excessive force. We have held repeatedly that an officer cannot place his knee on the back of a prone, unresisting suspect. *See, e.g., Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 903 (6th Cir. 2004) (It is "clearly established that putting substantial or significant pressure on a suspect's back while that suspect is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force."); *Hopper v. Phil Plummer*, 887 F.3d 744, 754 (6th Cir. 2018) (holding that "forcibly restraining an individual in a prone position for a prolonged period of time when that individual pose[s] no material threat" is unconstitutional) (quotation omitted); *Jennings v. Fuller*, 659 F. App'x 867, 870 (6th Cir. 2016) ("Leaving a suspect in a situation where he will likely be asphyxiated may be objectively unreasonable."); *Sweatt v. Doxtader*, 986 F. Supp. 2d 886, 898 (E.D. Mich. 2013) (denying qualified immunity even though the plaintiff "did not suffer from asphyxia," because the plaintiff "was kneed after he surrendered and was . . . laying [sic] prone on the ground").

Our cases primarily deal with instances where the victim was subdued and/or was not resisting. Judd's account is consistent with these cases because he claims that Haney "forcefully jumped on top of [him]" while he "lay helplessly on the ground handcuffed." We recognize that Judd is not always internally consistent in his account. For example, in his deposition testimony Judd implies that his arm was broken before Haney intervened, but states also that he believes Haney is the one who broke his arm. However, we are required to draw all reasonable inferences in Judd's favor. *Stoudemire*, 705 F.3d at 565. Judd is an elderly man who, by his own admission,

was not in good physical condition, was riled up, and was watching a store owned by his girlfriend go up in flames. Given the circumstances, the discrepancies in his story do not rise to the level of being "blatantly contradicted by the record." *Id.* (quotation omitted). Indeed, the eyewitnesses favor Judd's account. *See, e.g.,* Linda Shanks Deposition, RE 48-5 at 570 (stating Haney "was sitting on [Judd] . . . [Haney] jumped on top of [Judd]"); Gary Shanks Deposition, RE 48-4 at 526 (stating that "after [Officer Bennett] threw [Judd] on the ground, [Haney] pounced on [Judd] too"). "[W]here the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability." *Champion*, 380 F.3d at 900 (quoting *Pouillon v. City of Owosso*, 206 F.3d 711, 715 (6th Cir. 2000)). Judd therefore meets his burden on the first step of qualified immunity analysis.

In the second step of qualified immunity analysis, we ask whether Judd's asserted right was clearly established at the time of the incident. We find that it was. There are multiple cases in our circuit holding that kneeing and/or jumping on top of a subdued suspect constitutes excessive force. Although most of these cases involve police officers, not paramedics, we have held that paramedics who act in a law enforcement capacity are held to the same standard as police officers. *See, e.g., Stephan v. Heinig*, 676 F. App'x 466, 468 (6th Cir. 2017) (holding that the defendant *paramedic* "acted reasonably by intervening, because a reasonable *officer* in her position would have found the intervention necessary") (emphasis added); *Peete v. Metro. Gov't of Nashville.*, 486 F.3d 217, 220 (6th Cir. 2007) (holding that qualified immunity applied to firefighters, paramedics, and EMTs because even though qualified immunity cases normally involve police officers, "courts have held that the protection extends to actions by other government officials").

Because Judd prevails on both steps of the qualified immunity analysis, Haney is not entitled to qualified immunity at this stage of the litigation.

## III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.